# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>MICHAEL BRYAN ALBERT,<br><br>Debtor. | Bankruptcy Case No. 16-15128 TBM<br>Chapter 13 |

---

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO MODIFY**

---

### I. Introduction.

Chapter 13 of the Bankruptcy Code[1] "affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015). The *quid pro quo* is a Chapter 13 plan. A debtor must propose and obtain Court approval of a plan under which such debtor pays creditors out of future income. 11 U.S.C. §§ 1321-1325; *Bullard*, 575 U.S. at 498; *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010). For an above-median-income debtor, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). The time limitation was designed to avoid imposing a form of long-term involuntary servitude upon Chapter 13 debtors. If a debtor timely completes "all payments under the plan," such debtor is entitled to a discharge of most debts. 11 U.S.C. § 1328. Discharge is the *raison d'etre* of bankruptcy and provides a debtor with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). Chapter 13 is a very tough bargain — the vast majority of Chapter 13 cases fail because debtors either are unable to obtain confirmation of their plans or fail to complete all the required payments.[2]

In this bankruptcy proceeding, Debtor Michael Bryan Albert (the "Debtor") did almost everything right. He proposed a Chapter 13 Plan in which he committed to pay $541 each month for five years to the Chapter 13 Trustee for the benefit of his creditors. In 2016, the Court confirmed the Debtor's Chapter 13 Plan. Then, to his credit, even though he was struggling financially, the Debtor made all the required payments for four years and eleven months. But, he paid the last installment ($436) approximately 23 days late (according to the most common way to make such calculation).

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2] *See* Sara S. Greene, Parina Patel and Katherine Porter, *Cracking the Code: An Empirical Analysis of Consumer Bankruptcy Outcomes*, 101 MINN. LAW. REV. 1031, 1032 (2017).

1

Thereafter, the Debtor requested that the Court grant him a Chapter 13 discharge. No one objected. However, the Court determined *sua sponte* that the Debtor's discharge request raised numerous difficult legal issues concerning the five-year Chapter 13 plan limit. For example, there is no binding appellate precedent establishing when the five-year period actually starts. Although most courts use the date listed in the Chapter 13 plan for starting payments, some courts have ruled that the Chapter 13 plan confirmation date (usually much later) governs the calculation. And the difference could be dispositive in this case. Further, a recent appellate decision, *Kinney v. HSBC Bank USA, N.A. (In re Kinney)*, 5 F.4th 1136 (10th Cir. 2021), suggests that the Court might not have authority to grant the Debtor a discharge of his debts since the Debtor exceeded the five-year payment term. There are other legal complications too. To ensure due process, the Court requested that the Debtor and interested parties submit legal analysis. Subsequently, the Debtor, the Chapter 13 Trustee, and a group of bankruptcy lawyers (acting as *amicus curiae*) presented arguments in favor of discharge.

However, apparently in the alternative, the Debtor also asked that the Court approve modification of his Chapter 13 plan to extend the term from 60 months to 62 months. The Debtor relied on a fairly new amendment to the Bankruptcy Code designed to protect bankruptcy debtors adversely impacted by the COVID-19 pandemic: Section 1329(d). That Section provides that if a debtor "is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic," such debtor may extend the Chapter 13 plan term from five years to no more than seven years. The Debtor set forth various circumstances arising from the COVID-19 pandemic which caused him to have difficulty completing Chapter 13 plan payments within the five-year term. His factual allegations of financial hardship were uncontested.

The Court elects, in its judicial discretion, to address the Debtor's modification request first and the discharge request second. For the reasons set forth below, the Court grants the Debtor's request for modification of his Chapter 13 plan to extend the payment period by two months under Section 1329(d). Since the Debtor already completed all required payments under the proposed modified Chapter 13 plan within that extended time frame, the Court also will grant the Debtor a discharge per Section 1328(a). Given the foregoing resolution, the Court need not address any other legal complications such as start date controversy and the application of *Kinney*, 5 F.4th 1136. That binding appellate precedent does not foreclose modification (and extension of the payment period) under 11 U.S.C. § 1329(d).

II. **Jurisdiction and Venue.**

This Court has jurisdiction to enter final judgment on the issues presented in this bankruptcy case pursuant to 28 U.S.C. § 1334. The Chapter 13 plan modification and discharge issues are core proceedings under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), 157(b)(2)(L) (confirmation of plans),

157(b)(2)(J) (objections to discharges), and 157(b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. No party has contested the Court's jurisdiction or venue.

### III.     Procedural and Factual Background.

No party opposed the procedural and factual allegations asserted by the Debtor. And, not surprisingly, because there are no factual disputes, no party requested an evidentiary hearing on the modification and discharge issues. Accordingly, the Court relies for its factual findings on the uncontested facts advanced by the Debtor, supplemented with the record procedural background from the Court's docket. The Court makes the following findings under Fed. R. Civ. P. 52, Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014(c).

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on May 23, 2016.[3] At the same time, the Debtor submitted a "Chapter 13 Plan Including Valuation of Collateral and Classification of Claims" (the "Original Chapter 13 Plan").[4] Douglas B. Kiel, the Standing Chapter 13 Trustee (the "Chapter 13 Trustee") objected to the Original Chapter 13 Plan.[5] In order to resolve the objection, on July 20, 2016, the Debtor filed an "[Amended] Chapter 13 Plan Including Valuation of Collateral and Classification of Claims" (the "Amended Chapter 13 Plan").[6] In section III of the Amended Chapter 13 Plan, the Debtor provided:

> The Debtor submits to the supervision and control of the Trustee all or such portion of the debtor's future earnings as is necessary for the execution of the plan, including:
> . . . [f]uture earnings of $541 per month which shall be paid to the trustee for a period of approximately 60 months, beginning 6/18/2016.

No party objected to the Amended Chapter 13 Plan. Accordingly, the Court entered an Order confirming the Debtor's Amended Chapter 13 Plan on August 1, 2016.[7]

About five years later, on August 3, 2021, the Debtor filed his "Chapter 13 Debtor's Certification to Obtain Discharge" (the "Certification to Obtain Discharge") wherein the Debtor requested a discharge and stated that he had "completed all payments and obligations required by my chapter 13 plan."[8] A week later, the Chapter 13 Trustee submitted his "Trustee's Statement Regarding Debtor(s)

---

[3]     Docket No. 1. Unless otherwise indicated, the Court will refer to particular documents contained in the CM/ECF docket for this bankruptcy case using the convention: "Docket No. ___."
[4]     Docket No. 2.
[5]     Docket No. 18.
[6]     Docket No. 19.
[7]     Docket No. 25.
[8]     Docket No. 41.

Eligibility for Discharge" (the "Trustee's Statement").[9] In the Trustee's Statement, the Chapter 13 Trustee advised:

> The trustee is unaware of how this Court will calculate the timeliness of debtor payments to the trustee. However, if the plan term end date is calculated in accordance with the Humes/Kinney decisions, the final payment of $436 would appear to be twenty-three days late. The final plan payment is less than one payment. This is not a "material default" either in time or in amount; therefore, the discharge should enter. The trustee does not oppose discharge.

No party contested the entry of a discharge.

However, the Trustee's Statement (which suggested that the Debtor's final payment "would appear to be twenty-three days late") raised the legal issue of whether the Court was authorized to grant a discharge under binding appellate precedent: *Kinney*, 5 F.4th 1136. Therefore, the Court entered an "Order for Briefing" directing the Debtor, the Chapter 13 Trustee, and any other party in interest to file legal briefs:

> . . . setting forth additional facts and legal argument, complete with citation to statutory, rules, and case law authority, on the following and on any other matters they believe are relevant to the Court's consideration of whether the Court may enter the Debtor's discharge pursuant to 11 U.S.C. § 1328(a):
>
> (1)    When and how was the Debtor's final payment made and received?
>
> (2)    Did the Debtor's Plan commence on the date that the first payment under the Plan was due to be made (June 18, 2016, as set forth in the Plan), on the date that the Plan was confirmed (August 1, 2016), or some other date, and was payment completed before or after expiration of the term of the Plan?
>
> (3)    Does the *Kinney* decision allow the Court to enter the Debtor's discharge if the final payments due under the Plan were not made until after expiration of the 60-month term of the Plan? If so, under what circumstances?

---

[9]    Docket No. 42.

4

> (4)   If the Court determines that, under the reasoning of *Kinney* and/or *Humes*, the Debtor is not eligible to receive a discharge under 11 U.S.C. § 1328(a), should the Court convert the case to another chapter of the Bankruptcy Code, dismiss the case pursuant to 11 U.S.C. § 1307, or grant a discharge pursuant to a different subsection of 11 U.S.C. § 1328 (such as 11 U.S.C. § 1328(b) or (i))? If so, which procedures would the parties propose to employ to move the case toward conversion, dismissal, or entry of discharge?
>
> (5)   Does the Court need to conduct an evidentiary hearing on any factual issues? If so, on what issues? If not, what are the specific agreed on stipulated facts that the Court should utilize for its decision.[10]

Subsequently, the Chapter 13 Trustee and the Debtor submitted legal briefs.[11] The Chapter 13 Trustee stated that the Debtor's last payment ($436) was initiated on July 10, 2021, through the Chapter 13 Trustee's "ePay System" and posted on July 12, 2021. The Debtor seems to concur.

Both the Chapter 13 Trustee and the Debtor contended that the facts were not in dispute and the Court could rule on the basis of the uncontested facts and procedural background. Subsequently, a group of 16 Colorado consumer bankruptcy practitioners (Tara Gaschler Salinas, James Anderson, Berenice Arroyo, Stephen Berken, Bonnie Bell Bond, Debby Bowinski, Karen Cody-Hopkins, Jessica Deal, Steven Holland, Cynthia Kennedy, Thomas Mathiowetz, William Morris, Peter Mullison, Charles Parnell, David Serafin, and Andrew Trexler) (together, the "Bankruptcy Practitioners Group") filed a "Motion for Leave of Court to File *Amicus Curiae* Brief" along with an "*Amicus Curiae* Brief by Interested Bankruptcy Practitioners."[12] The Court granted authorization for the Bankruptcy Practitioners Group to participate as *amicus curiae*.[13] The Court appreciates the high-quality advocacy of the legal briefing submitted by the Debtor, the Chapter 13 Trustee, and the Bankruptcy Practitioners Group.

Meanwhile, on September 9, 2021, the Debtor submitted a "Motion to Modify Confirmed Chapter 13 Plan" (the "Motion to Modify") along with a proposed "Modified Chapter 13 Plan Including Valuation of Collateral and Classification of Claims" (the "Modified Chapter 13 Plan").[14] In the Motion to Modify, the Debtor implicitly recognizes that he made the last payment 23 days late and thus did not "complete all payments under the plan [Amended Chapter 13 Plan]" as that phrase has been interpreted in *Kinney*, 5 F.4th 1136. In the Motion to Modify, the Debtor averred the following facts:

---

10   Docket No. 47.
11   Docket Nos. 49 and 51.
12   Docket Nos 57 and 58.
13   Docket No. 60.
14   Docket Nos. 54 and 53.

5

- To date, Debtor has paid a total of $32,460, into his plan of a total plan base due of $32,460, in the confirmed chapter 13 plan.

- Debtor faced a reduction in wages and an increase in expenses during the COVID-19 pandemic.

- From the beginning of the pandemic through September of 2020, Debtor was required to be the sole caretaker of an uncle who was fighting lung cancer.  Given the uncle's ailment, he was highly susceptible to COVID-19 and needed to minimize the number of people to whom he was exposed.  Debtor incurred the costs of an 80 mile round trip, taken 5 days a week, to transfer his uncle to chemotherapy, radiation treatments, and doctor's appointment, etc…, during this time period.

- In March of 2020, Debtor's spouse contracted COVID-19 and was out of work for a period of three to four weeks, causing a loss of wages.

- In July of 2020, Debtor's position with Walgreens was outsourced to an overseas company, TCS.  This caused Debtor's health insurance to increase from approximately $380/month to over $1,100/month.

- With the change in employer came a change in working conditions.  Debtor was required to work from home and had to purchase hardware and software to facilitate working from home.

- As a result of the stress . . . Debtor developed high blood pressure and Type 2 diabetes in the fall of 2020. These condition[s], along with Debtor's history of asthma and pneumonia, made Debtor particularly susceptible to COVID-19, causing him to take extra measures to reduce his contact with the outside world such as home delivery of groceries and other essentials.

- The conditions and expenses reflected . . . above were not contemplated by his confirmed plan and are the direct result of the COVID-19 pandemic and steps

> he reasonably took to protect his health and the
> health of family members.[15]

The substantive and economic terms of the Modified Chapter 13 Plan are identical to the confirmed Amended Chapter 13 Plan, except that the Debtor proposed to extend the payment term from 60 months to 62 months. The Debtor already has paid to the Chapter 13 Trustee the entire amount required ($32,460) in the Modified Chapter 13 Plan. The Debtor sent the Motion to Modify and Modified Chapter 13 Plan out on notice to the Chapter 13 Trustee, all creditors, and parties in interest.[16] No party contested any of the factual allegations or the relief requested. Accordingly, the Court accepts each of the facts asserted by the Debtor in the Motion to Modify.

## IV. Legal Analysis.

### A. Chapter 13 Debtors Generally Must Complete Their Plan Payments Within Five Years.

Congress set a hard five-year limit on plan payments in Chapter 13 bankruptcy cases. Numerous statutory provisions confirm the restriction:

- Section 1322(d)(1) applies to above-median-income debtors[17] and states: "the plan may not provide for payments over a period that is longer than 5 years."

- Section 1322(d)(2) applies to below-median-income debtors[18] and states: "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."

- Section 1325(b)(4)(A) defines the "applicable commitment period" as "(i) 3 years; or (ii) not less than 5 years [for above-median-income debtors.]"

---

[15] Docket No. 54.
[16] Docket No. 55.
[17] In bankruptcy vernacular, an "above-median-income debtor" refers to a debtor whose income exceeds the "median family income" as "calculated and reported by the Bureau of the Census in the then most recent year" for a household "of the applicable State for a family of the same number" as the debtor's household. 11 U.S.C. §§ 101(39(A)) and 1325(b)(3). Above-median-income debtors must pass higher bankruptcy hurdles than below-median-income debtors.
[18] As the name suggests, the term "below-median-income debtor" refers to a debtor whose income is less than the "median family income" as "calculated and reported by the Bureau of the Census in the then most recent year" for a household "of the applicable State for a family of the same number" as the debtor's household. 11 U.S.C. §§ 101(39(A)) and 1325(b)(3).

7

- Sections 1329(a) and (c) permit modification of confirmed Chapter 13 plans to "extend or reduce the time for such payments"; however "the court may not approve a period that expires after five years after [the time that the first payment under the original confirmed plan was due]."

In this bankruptcy case, the Debtor is an above-median-income debtor. As stated succinctly in *In re Humes*, 579 B.R. 557, 559 (Bankr. D. Colo. 2018), the above-median-income debtor "must make payments for no more than five years and no less than five years or, put more simply, for exactly five years [unless the debtor pays all creditors in full prior to the expiration of five years]." If a Chapter 13 debtor makes "all payments under the [confirmed] plan" within the five-year term, then "the court shall grant the debtor a discharge of all debts provided for by the plan [with certain specific exceptions]." 11 U.S.C. §1328(a).

Notwithstanding the clear five-year limit for payments under a confirmed Chapter 13 plan, there is some debate concerning when the five-year period actually begins. The two main approaches are evident in the case law. *See Christensen v. Black (In re Black)*, 292 B.R. 693, 701 (10th Cir BAP 2003) (describing "two main conflicting conclusions about when 'the first payment under the original confirmed plan' becomes due"). A few courts have determined that the five-year period starts when a Chapter 13 plan is confirmed. *See West v. Costen*, 826 F.2d 1376, 1378 (4th Cir. 1987). On the other hand, "[a] strong majority of courts and bankruptcy treatises hold that the 60 month period runs from the date the first payment is due under Section 1326(a)(1)" (*i.e.,* "not later than 30 days after" [the petition date]) rather than from the confirmation date. *In re Lundy*, 2016 WL 6108524, at *12-13 (Bankr. N.D. Ohio Oct. 19, 2016). Such date is typically specified in the Chapter 13 plan. Cases in that ilk include: *In re Schuster*, 2015 WL 9282447, at *4 (Bankr. D.C. Dec. 18, 2015); *In re Ramsey*, 507 B.R. 736, 739 n.11 (Bankr. D. Kan. 2014); *In re Musselman*, 341 B.R. 652, 657 (Bankr. N.D. Ind. 2005); *Profit v. Savage (In re Profit)*, 283 B.R. 567, 575-76 (9th Cir. BAP 2002); *Baxter v. Evans (In re Evans)*, 183 B.R. 331, 333 (Bankr. S.D. Ga. 1995). There is no binding appellate precedent in the Tenth Circuit on such topic. *Kinney*, 5 F.4th at 1139, n.2 ("we assume without deciding that the five-year period began with the due-date of the first post-petition payment"). However, there is solid Colorado precedent right on point: Judge Brown's thorough and erudite *Humes* decision decided that the five-year period runs from the date specified in the Chapter 13 plan for the first plan payment — not the confirmation date which typically occurs much later. *Humes*, 579 B.R. at 560-61.

Leaving aside the start-date issue, the question then arises: Is the Court authorized to enter a Section 1328(a) discharge if a Chapter 13 debtor does not complete all plan payments within the five-year limit? Again, the answer is not so simple. Some courts have permitted a "grace period" for Chapter 13 debtors to catch up and complete all plan payments after the expiration of the five-year limit,

8

thereby earning a Section 1328(a) discharge. *In re Klaas*, 858 F.3d 820 (3d Cir. 2017). Behind the scenes, that appears to have been the practice in Colorado for years, provided that no party objected and the "cure payment" was received by the Chapter 13 Trustee within some "reasonable" amount of time after the expiration of the five-year term. Frequently, the Court was not even advised that payments had been made after the expiration of the five-year period. However, a few years ago, in *Humes*, Judge Brown criticized that practice and determined that the Court "does not have the discretion to allow a debtor to make plan payments beyond five years." 579 B.R. at 567. Accordingly, the *Humes* court denied the entry of discharge for a debtor who tried to complete Chapter 13 plan payments about seven months after the end of the five-year limit. *Id*. at 567.

The *Humes* approach was effectively validated (albeit not by name) in a recent Tenth Circuit decision: *Kinney*, 5 F.4th 1136. The message of *Kinney* is unequivocal: Chapter 13 debtors must complete all payments under their Chapter 13 plans within the five-year limit. To emphasize the point again, practitioners and Chapter 13 debtors now are on notice that Chapter 13 debtors must complete all payments under their Chapter 13 plans *within the five-year limit* in order to secure a Section 1328(a) discharge.[19]

In *Kinney*, the debtor "failed to make the last three mortgage payments [required under her Chapter 13 plan] during the [five year] plan period." *Kinney*, 2019 WL 7938815, at *1 (Bankr. D. Colo. Feb. 27, 2019), *aff'd*, 5 F.4th 1136. Instead, the debtor made the payments about two and a half months after the end of the five-year Chapter 13 plan term and then requested a Section 1328(a) discharge anyway. *Id*. The Bankruptcy Court characterized the debtor's actions as a "material default" under her Chapter 13 plan and dismissed the bankruptcy case without entry of a discharge. *Id*. at *4. On appeal, the Tenth Circuit framed the question as: "whether the bankruptcy court could grant a discharge [under such circumstances]." *Kinney*, 5 F.4th at 1139. The appellate panel unanimously determined that

> . . . the [bankruptcy] court couldn't permit Ms. Kinney to cure her default once the plan's five-year period ended.

5 F.4th at 1147.

Other passages in *Kinney* are similar, but in some, the Tenth Circuit injected the word "material" into the language it used to refer to default under a confirmed plan. For example, the *Kinney* appellate panel held:

- "Though the bankruptcy code is ambiguous, its language suggests that discharge is allowable only

---

[19] As set forth below, there may be an exception if a debtor is able to extend the five-year plan term under 11 U.S.C. § 1329(d).

9

> if the debtor had no ongoing material default when the plan ended." (*Id*. at 1140.)

- "Sections 1307(c) and 1328(a) don't definitively resolve the extent of discretion over dismissal and discharge, but suggest that discharge is unavailable when the plan ends with an ongoing material default." (*Id*. at 1141.)

- "The bankruptcy code suggests that material defaults cannot be cured after the plan has ended." (*Id*. at 1142.)

- "Given Ms. Kinney's material default, the plan's expiration *left the bankruptcy court without authority to grant a discharge.* We thus affirm dismissal of the Chapter 13 bankruptcy case." (*Id*. at 1147 (emphasis added).)

One appellate judge went even further and determined that the Bankruptcy Court lacked jurisdiction to grant a discharge. *Id*. at 1147-48 (Eid, J. concurring) ("Given that Kinney did not 'complet[e] . . . all payments under the plan,' as required by § 1328(a), within five years, as required by § 1322, the bankruptcy court was *without jurisdiction to grant a discharge* and properly dismissed the case. There is no ambiguity here." (emphasis added)).

The Tenth Circuit's *Kinney* holding would appear facially to bar the entry of discharge in this case. After all, the Debtor made his final required Chapter 13 plan payment after the expiration of the five-year period (at least as calculated using the Amended Chapter 13 Plan first payment date as the start date for the five-year period in accordance with the approach endorsed in *Humes*, 579 B.R. 567). But at least two very challenging legal issues may remain: (1) a timing issue; and (2) a materiality issue. Regarding timing, the Debtor now contends that the five-year period should start after confirmation of the Amended Chapter 13 Plan (August 1, 2016) instead of the date for first payment identified in the Amended Chapter 13 Plan (June 18, 2016). Since the Debtor initiated the final payment on July 10, 2021 (which payment cleared on July 12, 2021), the timing may make a dispositive difference. Regarding materiality, the Debtor, the Chapter 13 Trustee, and the Bankruptcy Practitioners Group all contend that the *Kinney* holding is limited to material defaults. They claim that since the Debtor's alleged default (a final payment about 23 days late at most) is not material, the Debtor should still be able to obtain a discharge under Section 1328(a).

The foregoing legal issues (which were briefed in a very professional manner by the Debtor, the Chapter 13 Trustee, and the Bankruptcy Practitioners Group) are quite difficult. As noted previously, there is no binding appellate precedent on the timing

10

issue.  The only Court of Appeals decision endorses using the confirmation date for the start date of the five-year period while the majority of Bankruptcy Courts have rejected that approach and instead utilize Section 1326(a)(1) as the basis for the start date.  Regarding discharge in the context of a single late payment, Judge Brown noted that "this Court does not want to deny debtors a discharge when they simply make the final payment two days late" and "there may be cases . . . where debtors are unable to complete plan payments due to circumstances beyond their control and subsequently cure a small arrearage in one payment, very shortly after the end of a plan."  *In re Kinney*, 2019 WL 7938816, at *4 and 6 (Bankr. D. Colo. Nov. 22, 2019), aff'd 5 F.4th 1136.  All that points out the equitable tension.  And then, there is the deep mystery why the Tenth Circuit repeatedly referred to the term "material default" throughout the *Kinney* decision (especially since materiality does not feature in the text of Section 1328(a) which governs discharge).  The Court struggles with such issues in the context on this case because the Debtor was just 23 days late at most in making the last payment after five long years.  And, creditors were not affected.

Now that the Court has identified these difficult legal issues and re-emphasized to practitioners and debtors the importance of completing all Chapter 13 plan payments within five years, fortunately, it turns out that the Court is not required to finally resolve such matters.  In addition to asking for discharge on the current record, the Debtor also filed the Motion to Modify and Modified Plan.  As explained below, the Court's decision on the Motion to Modify and Modified Plan is functionally dispositive.

**B.      The Debtor Has Satisfied the Requirements to Modify the Amended Chapter 13 Plan under Section 1329(d) and Extend the Payment Term by Two Additional Months.**

Congress recognized that financial circumstances may change during the five-year payment term required for above-median-income debtors in Chapter 13 bankruptcies.  So, it built some limited flexibility into the Bankruptcy Code.  Section 1329 allows debtors, creditors and the Chapter 13 Trustees to request modification and provides:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to —
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

11

> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) . . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but *the court may not approve a period that expires after five years after such time*.

(Emphasis added.)  Regarding the payment term applicable for modifications of Chapter 13 plans under Sections 1329(a)-(c), the Tenth Circuit confirmed the statutory time limit plainly:  ". . . modifications cannot provide for payments more than five years after the deadline for the first payment."  *Kinney*, 5 F.4th at 1139.

However, since the underlying default in *Kinney* (which occurred in 2018), the world — and the Bankruptcy Code — have changed.  Two words:  "COVID-19 pandemic."  The COVID-19 pandemic is the most significant public health disaster to hit the United States (and the globe) in the last century.  According to recent data from the Centers for Disease Control and Prevention, 45,316,210 people have been infected with the COVID-19 virus in the United States of which 733,834 have died.[20]  And, the COVID-19 pandemic has had significant economic impacts.  Attempting to ameliorate some of the initial adverse financial impacts of the COVID-19 pandemic and ensure future financial stability, on March 27, 2020, Congress enacted the "Coronavirus Aid, Relief, and Economic Security Act" (the "CARES Act").  Pub. L. 116-136, 134 Stat. 281 (Mar. 27, 2020).  At the time, the CARES Act was characterized as the largest economic relief bill ever enacted in the United States.

As part of the CARES Act, Congress added a new subpart (d) to Section 1329 allowing for the term of Chapter 13 plans to be extended past the five-year limit to a new seven-year maximum.  The new provision was originally set to expire after one year (*i.e.,* March 27, 2021), but was subsequently amended and extended through March 27, 2022 pursuant to the "COVID-19 Bankruptcy Relief Extension

---

[20] United States Centers for Disease Control and Prevention COVID Data Tracker available on www.covid.cdc.gov (last visited October 25, 2021).

12

Act of 2021" (the "COVID Extension Act").  Pub. L. 117-5, 135 Stat. 249 (Mar. 27, 2021).  The new Section 1329(d) (as enacted under the CARES Act and amended by the COVID Extension Act) is currently in effect and now provides:

> (d)(1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of the COVID-19 Bankruptcy Relief Extension Act of 2021 [March 27, 2021], the plan may be modified upon request of the debtor if —
>
> (A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; and
>
> (B) the modification is approved after notice and a hearing.
>
> (2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.
>
> (3) Sections 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).

Section 1329(d) does not separately specify the type of Chapter 13 plan modifications which are permissible.  Accordingly, the Court looks to Section 1329(a) and determines that the same type of modifications may be pursued under Section 1329(d).  In other words, a debtor may seek to:  (1) increase or reduce the amount of payments on claims of a particular class; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage).

In this bankruptcy proceeding, the Debtor tacitly (and in the alternative) concedes through the Motion to Modify that he did not "complete all payments under the plan [the Amended Chapter 13 Plan]" as that phrase has been construed in *Kinney*, 5 F.4th 1136.  So, he asked to modify.  The Debtor seeks only to extend the time for payments by two months — nothing else.  So, that is a permissible type of modification under Section 1329(a) and (d).  Beyond that, the Court discerns only the following additional requirements which must be established by the Debtor under Section 1329(d).  *First*, the Debtor must establish that he confirmed his Amended Chapter 13 Plan before March 27, 2021.  *Second,* the Debtor must prove that he "is experiencing or has

13

experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic."  *Third,* the Debtor must show that the requirements of Sections 1322(a), 1322(b), 1323(c), and 1325(a) are met.  *Fourth,* the Debtor must not propose an extension longer than seven years.  And, *fifth,* procedurally, the Debtor must provide notice and opportunity for a hearing to all creditors and parties in interest.  Notably, there is no statutory requirement that a motion to modify must be filed prior to the end of the original five-year plan term.  See, *e.g.*, *In re Harbin*, 626 B.R. 888 (Bankr. E.D. Mich. Mar. 22, 2021) (approving modification for payments made after expiration of five-year plan payment period).  And, it is not necessary for a debtor to prove that a modification is needed solely or exclusively because of COVID-19 hardships nor that such debtor was current in Chapter 13 plan payments prior to the onset of the COVID-19 pandemic.  See, *e.g.*, *In re Gilbert*, 622 B.R. 859, 864 (Bankr. E.D. La. 2020) ("nothing in the text of the CARES Act forecloses the relief available under § 1329(d) to those Debtors simply because they were behind in plan payments prior to March 27, 2020"); *In re Fowler,* 2020 WL 6701359 (Bankr. M.D. Ala. Nov. 13, 2020) (modification under Section 329(d) not limited to debtors who were current on Chapter 13 plan payments on March 27, 2020).

In this case, the Debtor has met his burden to prove all the requirements for modification under Section 1329(d) so as to extend the payment term by two additional months past the typical five-year limit.

*First*, the Debtor's Amended Chapter 13 Plan was confirmed on August 1, 2016, which is several years before March 27, 2021.  So, the Debtor falls within the timing parameters under Section 1329(d).

*Second*, by virtue of the uncontested facts presented by the Debtor, the Debtor has shown that he "has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic."  Most significantly, like many Americans, the Debtor suffered the double-whammy of a reduction in income and an increase in expenses.  The reduction in income occurred because the Debtor lost his job and his wife contracted COVID-19 and was out of work for about a month.  His expenses increased because: the Debtor became the sole caretaker for his COVID-19 susceptible uncle (which required the Debtor to incur substantial transportation expenses); the Debtor's health insurance costs increased by about $720 per month because of his employment termination; and the Debtor suffered health setbacks (high blood pressure and diabetes) as a result of stress which made him much more susceptible to COVID-19, thus causing him to take extra measures to isolate.  Those extra measures were costly.

*Third,* the requirements of Sections 1322(a), 1322(b), 1323(c), and 1325(a) are satisfied.  The Debtor is only proposing to extend the payment term for his confirmed Amended Chapter 13 Plan by a mere two months.  He is not attempting to reduce payments to any of his creditors and has demonstrated that he can make the final two payments (by already doing so).  The same reasons that the Court used to confirm the

Amended Chapter 13 Plan under Sections 1322(a), 1322(b), 1323(c), and 1325(a) are equally applicable to the Modified Plan.  And, the satisfaction of such elements is uncontested.

*Fourth,* in the Motion to Modify and Modified Plan, the Debtor proposes to extend the Chapter 13 plan payment term by only two months.  That period is well less than the Section 1329(d) seven-year maximum.

*Fifth,* procedurally, the Debtor sent the Motion to Modify and Modified Plan out on notice to all creditors and parties in interest.  No one objected.  Accordingly, while all creditors and parties in interest were afforded the opportunity for a hearing, no hearing was actually necessary.

Thus, the Court finds that modification of the Debtor's Amended Chapter 13 Plan is reasonable and warranted.  The Court grants the Motion to Modify and approves the Modified Plan.  As fair warning to bankruptcy practitioners, the Court observes that motions to modify under Section 1329(d) must be accompanied by factual allegations (or better still, an affidavit) providing sufficient details to enable the Court to determine whether or not a particular debtor actually suffered "material financial hardship" due to the COVID-19 pandemic.  Furthermore, prudence dictates that any request for modification should be submitted promptly after the circumstances justifying modification arise.

**C.     The Court Grants the Debtor a Discharge Under Section 1328(a) Since the Debtor Already Paid the Full Amount Required through the Extended Payment Period in the Modified Plan.**

Since the Court approved the Modified Plan, the Modified Plan has become the operative Chapter 13 plan for purposes of discharge. Under the Modified Plan, the Debtor was obligated to pay the Chapter 13 Trustee a total of $32,460 on or before August 18, 2021 (*i.e.*, within two months after expiration of the five-year period set forth in the Amended Chapter 13 Plan).  Based upon the uncontested facts, the Debtor has satisfied such obligation.  The Debtor also already submitted the Certification to Obtain Discharge verifying that he "completed all payments and obligations required by my Chapter 13 plan," has "no domestic support obligations," and has "not been convicted of a felony."  Under Section 1328(a), "as soon as practicable after completion by the debtor of all payments under the plan . . ., the court shall grant the debtor a discharge" of most types of debts.  Accordingly, the Court grants the Debtor a Section 1328(a) discharge and will enter a separate standard Section 1328(a) Order of Discharge.

## V.     Conclusion.

For the reasons set forth above, the Court:

GRANTS the Motion to Modify;

15

APPROVES the Modified Plan; and

GRANTS the Debtor a Section 1328(a) discharge since the Debtor has completed all payments required under the Modified Plan.

DATED this 27th day of October, 2021.

BY THE COURT:

Thomas B. McNamara
United States Bankruptcy

16